UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE SALISBURY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CARITAS ACQUISITIONS V, LLC, AND CITY OF SANTA MONICA,<br><br>　　　　　Defendants. | Case No.: CV 18-08247-CJC(Ex)<br><br>ORDER GRANTING DEFENDANT CITY OF SANTA MONICA'S MOTION FOR SUMMARY JUDGMENT [Dkt. 59] |

## I. INTRODUCTION

Plaintiff Lawrence Salisbury brings this action against Defendants Caritas Acquisitions V, LLC ("Caritas")[1] and the City of Santa Monica. (Dkt. 33 [First

---

[1] During the December 9, 2019 hearing on the instant motion, Plaintiff's counsel represented to the Court that Defendant Caritas has been dismissed from this case.

Amended Complaint, hereinafter "FAC"].) Defendants allegedly failed to reasonably accommodate Plaintiff's disability by refusing to allow him to park closer to his mobile home. Before the Court is Defendant City of Santa Monica's motion for summary judgment, or, in the alternative, summary adjudication. (Dkt. 59 [hereinafter "Mot."].) For the following reasons, the motion is **GRANTED**.

**II. BACKGROUND**

This case arises out of Plaintiff's residence in a mobilehome in Space 57 of the Mountain View Mobile Home Park (the "Park"), an affordable housing mobilehome park in Santa Monica, California. (*See* FAC.) The City of Santa Monica (the "City") owned the Park between 2000 and 2018. (*Id.* ¶ 7.) Starting in 2010, former Defendant Real Estate Consulting and Services, Inc. ("REC&S") managed the Park on the City's behalf. (Dkt. 63 [Plaintiff's Statement of Genuine Disputes, hereinafter "SGD"] 13.)[2] Plaintiff's father, James Salisbury, resided in Space 57 in a mobilehome that he owned (the "mobilehome") from 1974 until his death in 2013. (*Id.* 5, 25.) Plaintiff claims that he has

---

[2] As a preliminary matter, both parties filed numerous evidentiary objections. (*See* Plaintiff's Evidentiary Objections, Dkt. 64; Defendants' Evidentiary Objections, Dkt. 72; *see also* RAF [evidentiary objections throughout], SGD [same].) "[L]odging excessive evidentiary objections" seems to be "a growing trend amongst federal litigants." *Cusack-Acocella v. Dual Diagnosis Treatment Ctr., Inc.*, 2019 WL 2621920, at *1 (C.D. Cal. Apr. 8, 2019) (making this observation after receiving "another slew of unnecessary evidentiary objections"). "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009); *see Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118 (E.D. Cal. 2006) ("[T]he court will [only] proceed with any necessary rulings on defendants' evidentiary objections."). This is especially true where, as here, "many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Capitol Records*, 765 F. Supp. 2d at 1200 n.1. To the extent the Court relied on evidence subject to an objection, it relied only on admissible evidence, and the objections are therefore overruled. Any remaining objections are also overruled as moot. The Court also specifically overrules as moot Plaintiff's objection to the Declaration of Ava Lee (Dkt. 59 at 36) based on her use of an electronic signature page. (*See* Dkt. 64 at 1–2 [objection]; Dkt. 68-1 [properly signed declaration].)

also lived in the mobilehome since 1974, but the City disputes this allegation.  (*See* Dkt. 71 [City's Response to Plaintiff's Additional Facts, hereinafter "RAF"] 56.)

The following facts are undisputed.  Since at least 2011, Plaintiff lived—or at least sometimes stayed—with his father in Space 57.  (SGD 15.)  In 2011, REC&S and the City informed Plaintiff and his father that Plaintiff was not an authorized tenant of the Park and that he was not authorized to live in the Park.  (*Id.*)  In November 2011, Plaintiff applied to live in the Park.  (*Id.* 19.)  The City rejected the application because he failed to include required information and materials.  (*Id.* 19–21.)  Based on instructions from his father, Plaintiff never reapplied to become an authorized tenant.  (*Id.* 22.)

Plaintiff continued living in the mobilehome after his father passed away in April 2013 and acquired title to the mobilehome on April 23, 2013.  (*Id.* 24–25.)  In April, May, and June 2013, Plaintiff received three separate 60-day notices to vacate from the City.  (SGD 26, 28.)  These notices explained that his father's death terminated any tenancy in the Park and that Plaintiff was an unauthorized resident in unlawful possession of the premises.  (*Id.* 26.)  In July 2013, Plaintiff filed an unlawful eviction suit in state court.  (*Id.* 30.)  The case was dismissed on procedural grounds in 2015, and REC&S sent Plaintiff another notice to vacate.  (*Id.* 32.)[3]  Plaintiff ignored this notice, and the City never initiated eviction proceedings.  (*See id.*)  Between April 2013 and July 2018—when the City sold the Park—the City did not accept rent from Plaintiff for Space 57.  (*Id.* 50.)  According to the City, this uncollected rent totals more than $20,000.  (*Id.*)

---

[3] Plaintiff asks the Court to take judicial notice of the minute order resolving the state court unlawful eviction case (*Salisbury v. City of Santa Monica*, Case No. BC51413 (L.A. Cty. Sup. Ct. Jan. 13, 2015)). (Dkt. 65.)  It is well established that courts may take judicial notice of court filings and other matters of public record.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Accordingly, Plaintiff's request is **GRANTED**.

Starting in 2015, Plaintiff made a series of accommodation requests that led to the instant lawsuit. Plaintiff suffers from spondylolisthesis, osteoarthritis of the spine, and multi-level degenerative disc disease, which interferes with his ability to walk without pain. (RAF 57.) For many years, Plaintiff's father had a designated parking space—for a vehicle other than the mobilehome—in Space 58, directly adjacent to Space 57. (*Id.* 58.) In 2010, the City moved his designated parking space to a lot approximately 150 feet away from the mobilehome. (*Id.* 59.) On or about August 9, 2015, Plaintiff sent a "reasonable accommodation" request to REC&S, explaining his disability and asking for permission to park in Space 58. (SGD 33; FAC Ex. A.) REC&S and the City did not respond but issued several parking citations when Plaintiff parked his vehicle adjacent to the mobilehome. (SGD 41–44.) In November 2015, Plaintiff spoke to REC&S property manager Teresa Gonzalez and reiterated his request. (SGD 46.) Ms. Gonzalez ignored him. (*Id.*) In December 2016, Plaintiff left two voicemails on the Park's 24-hour phone line reiterating his accommodation request. (RAF 61–62.)[4]

In July 2018, the City sold the Park to Caritas. (SGD 48.) According to Plaintiff, he reiterated his accommodation request to Caritas, which initially denied the request. (*Id.* 52; FAC ¶ 20.) Plaintiff filed the instant lawsuit on September 24, 2018. (SGD 53.) At some point thereafter, Caritas executed a rental agreement with Plaintiff. (*Id.* 54.) In July 2019, Caritas altered Space 57 and allowed Plaintiff to park next to the mobilehome, resolving his accommodation request. (*Id.* 55.)

Plaintiff's sole cause of action against the City is for violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq.* (FAC ¶¶ 21–27.) Plaintiff claims that the City refused to make a reasonable accommodation under the FHA by denying his

---

[4] Plaintiff also left voicemails contesting parking citations in February and May 2017 but did not reference his accommodation request in these messages. (RAF 63–64.)

requests for a parking space closer to Space 57. *See* 42 U.S.C. § 3604(f)(2). Before the Court is the City's motion for summary judgment.

## III. LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law and is determined by looking to the substantive law. *Id.*

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477

U.S. at 256. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)–(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

//
//
//

## IV. DISCUSSION

### A. Statute of Limitations

The City first argues that the FHA claim fails because Plaintiff filed suit against the City outside the statute of limitations. The Court previously addressed this issue in an order denying Defendants' motions to dismiss and rejects it here for similar reasons. (*See* Dkt. 45 at 5–8.)

Under the FHA, "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). However, "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the limitations period] of the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982). Courts distinguish between a continuing violation, which may toll the statute of limitations period, and the continuing effects of a past violation, which do not. *Garcia v. Brockway*, 526 F.3d 456, 461–63 (9th Cir. 2008); *see also Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.").

The City first denied Plaintiff's August 2015 accommodation request by issuing parking citations in October 2015. (*See* Dkt. 45 at 5.) The City argues that, at the latest, the FHA statute of limitations began to run when Ms. Gonzalez refused to speak to Plaintiff in November 2015. (*See* SGD 46.) According to the City, Plaintiff has not

presented evidence to support a violation that continued into the statutory period, which started in September 2016. The Court disagrees.

The City does not dispute that Plaintiff left two voicemails in December 2016 reiterating his accommodation request. (SGD 61–62.) Instead, it argues that these voicemails cannot establish a continued violation because (1) the City unequivocally denied the initial request because of Plaintiff's status as an unauthorized resident and (2) Plaintiff apparently believed that "nothing was going to be done" about his requests. (*Id.* 46–47, Mot. at 9, 14–15.) The Court is not convinced. Plaintiff repeatedly asked for an accommodation, which the City repeatedly refused. If Plaintiff can show that these refusals were unlawful, he can show "a continuing violation manifested in a number of incidents." *See Havens*, 455 U.S. at 381. Plaintiff's skepticism that the City would grant the requests does not change this analysis, nor does the City's steadfast basis for its denials.

### B. Punitive Damages

As an initial matter, the City argues that Plaintiff cannot support a claim for punitive damages under the FHA. To obtain punitive damages, Plaintiff must show that the City's conduct was "wanton, willful, malicious, fraudulent, and/or oppressive." *See Brown v. Perris Park Apartments P'ship*, 2018 WL 3740522, at *8 (C.D. Cal. July 17, 2018). Plaintiff concedes that he is not entitled to punitive damages against the City. (Dkt. 62 [Plaintiff's Opposition, hereinafter "Opp."] at 18.) Accordingly, Plaintiff's claim against the City is only for actual damages, attorney's fees, and costs. (*See* FAC ¶¶ 26–27.) *See* 42 U.S.C. § 3613(c)(1).[5]

---

[5] Because the City no longer owns the Park, the Court concludes that Plaintiff will also not be able to support a claim for injunctive relief against the City. *See* 42 U.S.C. § 3613(c)(1).

-8-

### C.     Reasonable Accommodations under the FHA

Plaintiff's FHA claim alleges that the City violated 42 U.S.C. § 3604(f)(2), which makes it unlawful to "discriminate against any person . . . in the provision of services or facilities" in connection with the sale or rental of a dwelling because of a disability. "Discrimination" is defined to include a "refusal to make a reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To succeed on an FHA accommodation claim, a plaintiff must show (1) that he suffers from a "handicap" as defined in 42 U.S.C. § 3602(h), (2) that the defendant knew or should reasonably be expected to know of the handicap, (3) that accommodation of the handicap may be necessary to afford the plaintiff an equal opportunity to use and enjoy the dwelling, (4) that the accommodation was reasonable, and (5) that the defendant refused to make the accommodation. 42 U.S.C. § 3604(f)(3)(B); *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006), *cert. denied*, 549 U.S. 1216 (2007).

The City argues that Plaintiff's requested accommodation was not "necessary" or "reasonable" because Plaintiff had no legal right to live in the Park. *See DuBois*, 453 F.3d at 1179 (third and fourth elements).[6] Framed differently, it argues that it had no obligation to consider Plaintiff's requests and therefore its denials did not cause the alleged injuries. Plaintiff concedes that he has never been named in a lease or rental agreement for Space 57. (SGD 6; Dkt 62-6 [Deposition of Lawrence Salisbury, hereinafter "Salisbury Depo."] at 126.)[7] Instead, he argues that his longstanding and continued residence created an implicit right of occupancy. (*See* Opp. at 12.) The parties

---

[6] The City does not dispute that Plaintiff suffers from a handicap, that it knew about the handicap, or that it refused to make an accommodation. *See DuBois*, 453 F.3d at 1179 (first, second, and fifth elements).

[7] Plaintiff and the City both submitted slightly different excerpts from Plaintiff's deposition transcript. (*See* Dkt. 61-1; Dkt 62-6.) For brevity, the Court cites to both exhibits as "Salisbury Depo."

agree that Plaintiff's FHA claim presupposes a valid tenancy. A landlord has no obligation to provide reasonable accommodations to a resident that illegally occupies a dwelling. *See* 42 U.S.C. § 3604(f)(2); *see also Garcia v. Alpine Creekside, Inc.*, 2013 WL 3228453 (S.D. Cal., June 25, 2013), at *6–7 (explaining that the FHA does not create "an impenetrable shield against eviction").

The City's evidence negates Plaintiff's claim that he lived in the Park with the City's implied or express consent. The City submitted copies of leases Plaintiff's father executed with the City and its predecessors in 1974, 1988, 1990, 2000, and 2005. (Dkt. 59-5 Exs. 1–3; Dkt 59-6 Exs. 39–42, 44–46.) Plaintiff is not named as a tenant or occupant in any of these documents. (*See id.*) In 2000, Plaintiff's father completed a City of Santa Monica Tenant Estoppel Certification, declaring under penalty of perjury that he was the only tenant or occupant of the unit. (Dkt. 59-6 Ex. 44.) That same year, Plaintiff's father listed Plaintiff as an emergency contact in a resident update form, which gave an address for Plaintiff outside the Park. (*Id.* Ex. 42.) In 2005, Plaintiff's father submitted an occupancy form and again declared under penalty of perjury that he was the only tenant or occupant of the mobilehome. (*Id.* Ex. 46.)

The City's evidence shows that, after learning that Plaintiff planned to live in the Park in 2011, it consistently refused to recognize Plaintiff as an authorized resident or tenant unless and until he submitted a valid resident application. In July 2011, Plaintiff's father sent a letter to REC&S explaining that "Lawrence is now taking care of me and will be residing with me at my request. He has been a long time [sic] resident of the park since 1975." (Dkt 59-5 Ex. 5.) REC&S responded that "[y]our son is not on your lease and we have no record of him being approved to reside in the park." (*Id.* Ex. 6.) The City offered Plaintiff and his father several options for establishing Plaintiff as an authorized tenant or a live-in aid. (*Id.* Exs. 6, 8.) In September 2011, Plaintiff's father responded that Plaintiff would apply for residency "when time permits" and that "[h]e

1  has not moved in, but is making sure my bills/rent are paid on time." (*Id.* Ex. 24.)
2  Plaintiff's November 2011 residency application was denied because he failed to include
3  required materials and information, including copies of identifying documents, the $80
4  application fee, asset information, proof of SSDI benefits, and a signature from the
5  current resident—his father. (*See id.* Ex. 10, 11.) This application also listed Plaintiff's
6  residence at an address outside the Park and noted that he had lived there since 1962. (*Id.*
7  Ex. 10.) Plaintiff never reapplied to become an authorized tenant. (SGD 22.) As
8  explained above, after Plaintiff's father died in April 2013, the City refused to accept rent
9  payments from Plaintiff and sent him several notices to vacate before and after the
10 resolution of the state court lawsuit. (*Id.* 24–28, 30, 32.)

12 Based on this evidence, the Court finds that City has met its initial burden of
13 negating an essential element of Plaintiff's FHA claim. *See Adickes*, 398 U.S. at 158–60.
14 Under California law, an approved occupant that remains in a rental unit after the named
15 tenants vacate can become a tenant by occupancy with consent. *Mosser Companies v.*
16 *San Francisco Rent Stabilization & Arbitration Bd.*, 233 Cal. App. 4th 505, 515 (2015)
17 (holding that a son did not "inherit" his parent's tenancy after his parents vacated a rented
18 apartment but had his own right of occupancy based on his approved, longstanding
19 residence and landlord's implicit consent). The touchstone of an implied tenancy is the
20 consent of the owner. *Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration*
21 *Bd.*, 215 Cal. App. 3d 490, 494 (Ct. App. 1989); *see also* Santa Monica Muni. Code §
22 1801(g) (defining a rental housing agreement as "[a]n agreement, oral, written or implied,
23 between a landlord and tenant for use or occupancy of a rental unit and for housing
24 services"). The City has presented clear evidence showing that it never gave such
25 consent. Based on the City's evidence, when Plaintiff inherited the mobilehome in April
26 2013, his father was the only authorized resident of Space 57. Accordingly, Plaintiff's
27 father's death terminated his month-to-month tenancy. *See* Cal. Civil Code § 1934. The
28 termination of a month-to-month lease upon notice of the death of the only authorized

tenant or resident "prevents the inequitable result of requiring the landlord to participate in a potentially indefinite lease with a tenant he never contracted with in the first place." *Miller & Desatnik Mgmt. Co. v. Bullock*, 221 Cal. App. 3d Supp. 13, 18–19 (1990).

The burden therefore shifts to Plaintiff to present evidence showing a "genuine issue for trial." *Anderson*, 477 U.S. at 256. Plaintiff has not carried this burden. Plaintiff first argues that the City consented to his residence in the Park and created an implied tenancy sometime before his father's death in April 2013.[8] His only evidence to support this claim is a single rental invoice issued on March 21, 2010 addressed to "JG/LA Salisbury." (Dkt. 59-6 Ex. 47.)[9] Plaintiff's father allegedly asked for Plaintiff's initials to be included on rental invoices sometime in 2008 or 2009. (*See* Salisbury Depo. at 50.) According to Plaintiff, the City initially agreed, but then removed his initials from the invoices sometime in 2010. (*See id.*) Plaintiff claims that he has copies of other invoices addressed to "JG/LA Salisbury" from this period but has not submitted them to the Court. (*See id.*) Plaintiff concedes that he never made any rent payments to the City prior to his father's death. (*See* Salisbury Depo. at 92, 199, 220.) This invoice alone is insufficient to create a genuine issue of material fact. Nowhere in the invoice does the City indicate that it recognized Plaintiff as an approved occupant. (Dkt. 59-6 Ex. 47.) *Cf. Mosser Companies*, 233 Cal. App. 4th at 515. No jury could reasonably find that the City consented to Plaintiff's residence in the Park and created a binding landlord-tenant relationship—one that continued after his father's death—based on this document alone. *See Anderson*, 477 U.S. at 252.[10]

---

[8] Accordingly, Plaintiff argues that he had no obligation to formalize his tenancy when the City objected to his residency in 2011 or when he inherited the mobilehome in 2013.

[9] Plaintiff also testifies that he lived in the Park for many years, but his testimony does not address whether he lived there with the City's knowledge and/or implied or express consent.

[10] Plaintiff testified that his brother's name appeared on rental invoices before 2008 even though he was not living there at the time. (*See* Salisbury Depo. at 30, 125.)

Plaintiff next argues that he acquired a valid tenancy under the California Mobilehome Residency Law ("MRL"), California Civil Code §§ 798, *et seq.* Under the MRL, an heir or joint tenant who inherits title to a mobilehome in a private park must comply with the same requirements as a prospective purchaser who seeks to establish a tenancy in the park. Cal. Civ. Code § 798.78(d). The transfer of a mobilehome that will remain in a park—whether by sale or by inheritance—requires "a fully executed rental agreement or a statement signed by the park's management and the prospective homeowner that the parties have agreed to the terms and conditions of a rental agreement." *Id.* § 798.75(a). The management of a park can require notice of a transfer and "the right of prior approval" of a purchaser of—or an heir to—a mobilehome that will remain in the park. *Id.* § 798.74. "In the event the [transferee] fails to execute the rental agreement, the [transferee] shall not have any rights of tenancy," and if the transferee ignores a notice to surrender the site, he becomes an "unlawful occupant." *Id.* § 798.75(b), (c). Plaintiff concedes that he never executed a rental agreement with the City after inheriting the mobilehome. (SGD 23–24.)

Plaintiff argues that he nevertheless established a valid tenancy under the MRL because the City improperly and in bad faith failed to offer Plaintiff a rental agreement after the transfer. (Opp. at 14.) A transferee occupying a mobilehome is not an unlawful occupant if (1) "[t]he occupant is the registered owner of the mobilehome," (2) "[t]he management has determined that the occupant has the financial ability to pay the rent and charges of the park; will comply with the rules and regulations of the park, based on the occupant's prior tenancies; and will comply with this article," and (3) "[t]he management failed or refused to offer the occupant a rental agreement." Cal. Civ. Code § 798.75(d). The evidence in the record undermines Plaintiff's MRL argument.

As discussed above, park management can require notice of the transfer of a mobilehome that will remain in the park and can require prior approval of the tenancy of

the transferee. *See id.* The Park had such a policy in place. (*See* Dkt. 59-6 Ex. 31 at COSM00134.) Plaintiff testifies that he told Ms. Gonzalez about the transfer approximately a month after inheriting the mobilehome but concedes that he did not ask to execute a rental agreement after his father's death and never attempted to cure the defects in his 2011 tenancy application. (*See* Dkt. 61-1 at 189, 193–96.) Indeed, Plaintiff maintains that he had no obligation to formalize his tenancy. (*See* SGD 23A, 24.) But the MRL clearly places the initial burden on the transferee of a mobilehome to provide notice of the transfer and to attempt to perfect tenancy in the park. *See* Cal. Civ. Code §§ 798.74–798.75, 798.78. Plaintiff has not presented any evidence that he made such an attempt. Nor has he presented evidence that the City determined he had the financial ability to pay the rent or comply with the Park's rules and regulations. *See id.* § 798.75(d). Accordingly, the Court finds that Plaintiff has failed to establish a genuine issue of material fact as to the existence of a valid tenancy under the MRL.

Finally, Plaintiff argues that he acquired a tenancy at will through the implied consent of the City sometime between his father's death in April 2013 and the December 2016 accommodation request.[11] A tenancy at will is "[a] permissive occupation of real estate, where no rent is reserved or paid and no time agreed on to limit the occupation." *Covina Manor, Inc. v. Hatch*, 133 Cal. App. 2d Supp. 790, 793 (Cal. App. Dep't Super. Ct. 1955). As with all implied tenancies, the key inquiry is the property owner's implied or express consent. *See id.*; *Parkmerced Co.*, 215 Cal. App. 3d at 494. No tenancy at will arises when the initial occupation is without the landlord's knowledge and express or implied consent. *Norton v. Overholtzer*, 63 Cal. App. 388, 396 (Cal. Ct. App. 1923). Plaintiff fails to present any affirmative evidence that the City consented to his tenancy. Before and immediately after his father's death, the City expressly and repeatedly asked Plaintiff to vacate Space 57. (SGD 26, 28.) Between 2013 and 2015, the City challenged

---

[11] For this motion, the Court need not address whether Plaintiff established an implied tenancy sometime after making the December 2016 accommodation request.

the legality of Plaintiff's occupancy in state court. (*Id.* 30.) After the case was dismissed, the City told Plaintiff to vacate Space 57 before August 1, 2015. (*Id.* 32.) Throughout this period, the City consistently refused to accept rent payments from Plaintiff. *Cf. Mosser Companies*, 233 Cal. App. 4th at 515 (finding tenancy by consent where landlord attempted to collect rent from occupant).

The only evidence that the City implicitly consented to Plaintiff's continued occupancy during this period is its decision not to file an unlawful detainer action after the resolution of the state court case in 2015 and before Plaintiff's 2016 accommodation request. The Court finds that this inaction alone is insufficient to create a genuine issue of material fact of whether the City implicitly consented to Plaintiff's continued occupancy. *Cf. Parkmerced Co.*, 215 Cal. App. 3d at 494 (implied tenancy based on landlord's acquiescence by silence acceptance of rent from occupant). Accordingly, the Court **GRANTS** the City's motion for summary judgment on the FHA claim.

The Court's decision is a narrow one. It cannot adjudicate the unlawful eviction case dismissed by the state court. Nor does it resolve whether the City could have successfully brought an unlawful detainer action sometime after Plaintiff inherited the mobilehome. Instead, the Court's decision is narrowly confined to Plaintiff's FHA claim and the specific facts at hand. *See DuBois*, 453 F.3d at 1179 ("The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination.").

//
//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, the City of Santa Monica's motion for summary judgment is **GRANTED**. Because the City is the sole remaining Defendant, this case is **DISMISSED** in its entirety on the merits.[12]

DATED: December 10, 2019

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[12] During the December 9, 2019 hearing on the instant motion, Plaintiff's counsel represented to the Court that the City was the sole remaining Defendant in this case and that all other Defendants have been dismissed.

-16-